UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-22104-CIV-GOLD/MCALILEY

JESUS SANTANA and MAYDA
PORTAL, as representatives of
the Estate of Osiel Santana,

     Plaintiffs,

vs.

CITY OF HIALEAH,

     Defendant.

_____/

ORDER DENYING PLAINTIFFS' MOTIONS TO STRIKE [DE 110] [DE 115];
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE 91]

## I.    Introduction

THIS CAUSE is before the Court upon the Plaintiffs' Motion to Strike Defendant's

Statement of Facts in Support of Summary Judgment [DE 115], Plaintiffs' Motion to Strike

the Sworn Statement of Sgt. Gerry [DE 110] (collectively "Plaintiffs' Motions"), and

Defendant's Amended Motion for Summary Judgment [DE 91] ("Defendant's Motion").  I

have jurisdiction pursuant to 28 U.S.C. § § 1331 and 1367(a) because Plaintiffs' Initial

Complaint – which was properly removed to this Court – asserted a claim pursuant to 42

U.S.C. § 1983.[1]  For the reasons that follow, I deny Plaintiffs' Motions to Strike and grant

Defendant's Amended Motion for Summary Judgment.

## II.    Procedural Posture

Plaintiffs' Initial Complaint was originally filed in Florida state court on May 23, 2008

and asserted two causes of action arising out of the death of Osiel Santana ("Santana"):

---

[1] This claim has since been dropped.  *See* [DE 83].

(1) Negligence; and (2) Negligent Hiring/Training.  [DE 1].  Defendant removed the action on July 24, 2008, asserting that the negligent hiring count was not actually a state law claim, and that the plain language of the complaint indicated that Plaintiffs were asserting a cause of action for deliberate indifference to constitutional rights pursuant to 42 U.S.C. § 1983.  *See* [DE 1].  Plaintiffs agreed.  *See* [DE 7] (conceding in joint filing that this "is also a case of negligent hiring and/or training against the City of Hialeah for deliberate indifference to the constitutional rights of arrested persons under 42 U.S.C.§ 1983.").

Despite having conceded the existence of a federal question in a joint filing, Plaintiffs moved to remand the case on May 5, 2009 – nearly ten months after the action was originally removed.  [DE 48].  After holding a hearing on Plaintiffs' motion, I issued an order on June 23, 2009 denying the Motion for Remand and granting Plaintiffs leave to amend the Complaint.  *See* [DE 82].  On June 25, 2009, an Amended Complaint [DE 83] was filed.  The Amended Complaint asserted a single count for negligence resulting in wrongful death.  Defendant answered Plaintiffs' Amended Complaint on July 1, 2009.  [DE 84].

On July 27, 2009, Defendant filed an Amended[2] Motion for Summary Judgment [DE 91].  In support of its Motion, Defendant filed a Memorandum of Law [DE 92], a ten-page Separate Statement of Material Facts in accordance with S.D. Fla. Local Rule 7.5(A) [DE 93], and various exhibits.  *See e.g.,* [DE 94 - 102, 104-106, 108, 111, 114].  On July 29, 2009, Plaintiffs filed a Response in Opposition to Defendant's summary judgment motion,

---

[2] Defendant filed its original Motion for Summary Judgment on June 17, 2009 [DE 64]. However, that Motion was denied as moot and subsequently amended as a result of the Plaintiffs having filed an Amended Complaint.  *See* [DE 83]; [DE 91]; [DE 123].

but did <u>not</u> file a statement of facts in separately numbered paragraphs in accordance with S.D. Fla. Local Rule 7.5(B).  *See* [DE 103].  On August 5, 2009, Defendant filed a Reply to Plaintiffs' Response in Opposition to Summary Judgment [DE 112].

Approximately a week after filing their non-compliant response to Defendant's summary judgment motion, Plaintiffs filed a motion to strike Defendant's separate statement of facts and requested permission to be excused from having to comply with S.D. Fla. Local Rule 7.5(B).  *See* [DE 115].  Plaintiffs also filed a motion to strike a Defense summary judgment exhibit on timeliness grounds, arguing that the it should be stricken because it was filed after Plaintiffs had already responded to Defendant's motion.  *See* [DE 110].  On August 10, 2009, I issued an order indicating that oral argument on Plaintiffs' Motions to Strike would be heard on the same date as Defendant's summary judgment motion.  *See* [DE 116].  On August 17, 2009, Defendant responded to Plaintiffs' Motions to Strike [DE 117], and on August 25, 2009, Plaintiffs filed a Reply to Defendant's Response [DE 118].   On October 23, 2009, I heard oral argument on Defendant's Amended Motion for Summary Judgment and Plaintiffs' Motions to Strike.  *See* [DE 125].

## III.    Material Facts For Which There is No Genuine Issue to Be Tried[3]

---

[3] In support of its Motion, Defendant submitted a rather extensive Separate Statement of Facts – founded upon a voluminous number of exhibits – setting forth the material facts not in dispute in separately numbered paragraphs in accordance S.D. Fla. Local Rule 7.5 [DE 95]. Plaintiffs did not submit a separate statement, but rather provided a concise statement of facts with record citations in the body of their Response to Defendant's Amended Motion for Summary Judgment. *See* [DE 103].  Plaintiffs also moved to strike Defendant's ten-page statement of facts as inappropriately lengthy.  Rather than deeming Defendant's facts admitted pursuant to the Local Rules or striking Defendant's statement of facts as Plaintiffs request, *see* [DE 115], I have independently determined the undisputed material factual background from my review of the record and each party's statement of facts, drawing all reasonable inferences in favor of the Plaintiffs.  *See U.S. v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004)  (noting that where a party violates local summary judgment rules pertaining to statements of facts, district courts should conduct review

On May 24, 2004, Hialeah Police received a 911 call at approximately 3:53 p.m. reporting a burglary in progress by a white male with no shirt and black shorts who, according to the caller, appeared to be under the influence of alcohol or drugs.  [DE 93-1 at ¶ ¶ 1, 3]; [DE 103, p.1].  As a result of this call, two officers by the name of Gonzalez and Rosengaus were dispatched to the scene of the purported burglary.  [*Id.* at ¶ 2].  Although Gonzalez and Rosengaus were the officers initially designated to respond to the call, another officer by the name of Garrido was the first to arrive at the specified location as an undispatched back-up.  *Id.*  When Officer Garrido arrived, she encountered a male suspect who fit the description provided by the caller.  [*Id.* at ¶ ¶ 4 - 9].  After initially cooperating with Officer Garrido's commands, the suspect became combative just as Officer Gonzalez was arriving.  [*Id.*  at ¶ ¶ 15 - 17].  In order to subdue the suspect, Officers Gonzalez, Garrido, and Rosengaus – who joined Gonzalez and Garrido in the midst of the confrontation – used force and handcuffed the suspect, who had continued resisting the officers until being threatened with a tactical baton.  [*Id.* at ¶ ¶ 17 - 23].  Once the suspect was restrained, the officers promptly summoned paramedics to treat the suspect for a bloody nose and to examine him in light of the fact that he appeared incoherent and possibly under the influence.  [*Id.* at ¶ 24]; [DE 67-1, p.4]; [DE 103, p.2].

---

of record to ensure that material facts alleged by compliant party are adequately established).

Further, I deny Plaintiffs' Motion to Strike Sgt. Gerry's Sworn Statement [DE 110] because Plaintiffs suffered no prejudice as a result of Defendant's three-day filing delay.  First, Plaintiffs' claim that they were ambushed after having "laid all of [their] cards on the table" is not well-taken given that Plaintiffs were aware of Sgt. Gerry's sworn statement as early as September of 2008, when its existence was originally disclosed by Defendant.  [DE 117, p.4]. Moreover, Plaintiffs had an additional two weeks after Sgt. Gerry's sworn statement was filed to submit an amended response, but chose not to.

At approximately 4:12 p.m. – nineteen minutes after the initial 911 call – paramedics arrived and made contact with the suspect, whose name was Osiel Santana.  [DE 103, p.2]; [DE 93-1 at ¶ 29].  After examining Santana visually, "[p]aramedics neither observed nor recorded any loss of consciousness, disorientation, confusion, inappropriate words, incomprehensible sounds, or manifestations of motor pain; they reported the maximum Glascow Coma Score (GCS)[4] of 15 . . . that [Santana] came out of the police unit on his own, that his gait was normal," and that he had some minor trauma to his face.  [DE 93-1, ¶ ¶ 30 - 31].  When the paramedics attempted to further examine Santana, he declined further treatment, at which point the paramedics cleared the area and "released Santana for transport by police in the ordinary course of their law enforcement duties to Ward D, the hospital wing of the detention center."   [*Id.* at ¶ ¶ 31, 33-34].  While it appeared to the paramedics that Santana was under the influence of either alcohol and/or narcotics, they "communicated no need for urgent transport to a medical facility" to the officers at the scene.  [DE 103, p. 2]; [DE 93-1, ¶ 31c].

At approximately 5:10 p.m., after the paramedics and police had cleared the scene, the police officers transported Santana to a police substation to be photographed and processed.  [DE 93-1, ¶ 38]; [DE 103, p. 3].  At the time he was processed at the substation, Santana appeared "pissed off," and was breathing heavily "as if he were angry." [DE 93-1, ¶ 40]; [DE 103, p.3].  At approximately 5:40 p.m., Officers Garrido and Gonzalez left the substation with Santana en route to Jackson Memorial Hospital "for medical

---

[4]  The Glascow Coma Scale is a test that "evaluates whether the patient is oriented, awake, and conscious by examining the eye opening area and the patient's verbal and motor responses."  *Bernardo v. Senkowski*, 2004 WL 1661099, *4 (S.D.N.Y. July 23, 2004).

clearance in order to [have Santana] admitted into the general inmate population of the jail." [DE 93-1, ¶ 42, 46]. While en route to the hospital, Santana vomited in the back seat, banged his head and torso against the backseat cage of the patrol car, and eventually fell asleep or lost consciousness. [DE 103, p.3]; [DE 93-1, ¶ 47]. However, when questioned by the transporting officers about his condition, "he indicated he was all right." [DE 93-1, ¶ 47].

At approximately 5:55 p.m., the officers and Santana arrived at Jackson Memorial Hospital and proceeded to the Ryder Trauma Unit ("Ryder") seeking medical assistance. [DE 93-1, ¶ 49]; [DE 103, p.3]. When they arrived at Ryder, the hospital staff refused to evaluate Santana and directed the officers to Ward D on the other side of the hospital. [DE 93-1, ¶ 49]. The officers arrived at Ward D with an unconscious Santana at 6:26 p.m., where they were told to go to the emergency room on the other side of the hospital. [*Id.* at ¶ 51]. The officers then left Ward D at 6:35 p.m. and wheeled Santana into the emergency room at approximately 6:39 p.m., where hospital staff placed him on a gurney and wheeled him back over to Ryder for treatment. [*Id.* at ¶ 53].

After receiving treatment for approximately twenty-one hours, Santana expired on May 25, 2004. [DE 103, p.4]; [DE 93-1 at ¶ 56]. Autopsy findings and toxicological analysis determined that the cause of death was acute atropine toxicity induced by Santana's consumption of a toxic tea brewed from the flowers of the Angel's Trumpet plant. [DE 93-1 at ¶ 61]. Neither party has asserted or provided any evidence that the administration of first-aid by police officers would have increased Santana's chances of survival. However, the Deputy Chief Medical Examiner of Miami-Dade County did testify that it is possible that Santana could have been saved had he been administered an

appropriate dose of physostigmine prior to 5:00 p.m.. [DE 103, p.4].

### IV.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that, drawing all inferences in favor of the nonmovant,  there is no genuine issue as to any material fact and judgment is proper as a matter of law.  Fed.R.Civ.P. 56(c).  The court must determine the relevant set of facts and draw all inferences in favor of the opposing party "to the extent supportable by the record." *Scott v. Harris*, 550 U.S. 372, 381 n. 8, 127 S. Ct. 1769, 1776 n. 8 (2007).  The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. *Id.* at 380 (quoting Federal Rule Civil Procedure 56(c)).  A genuine dispute requires more than "some metaphysical doubt as to the material facts," *Id.* at 380 (quotation marks and citation omitted), and a "mere scintilla" of evidence is insufficient; rather, the non-moving party must produce "substantial evidence" in support of its position in order to defeat a motion for summary judgment.  *Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004). Furthermore, summary judgment is appropriate even if "some alleged factual dispute" between the parties remains, so long as there is "no genuine issue of  material  fact."   *Scott*, 550  U.S. at 380 (internal quotes and citation omitted).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact.  *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).  Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that

there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004). In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. However, where no reasonable jury could find in the non-moving party's favor, summary judgment is appropriate. *Stewart v. Happy Herman's Cheshire Bridge*, Inc., 117 F.3d 1278 (11th Cir. 1997).

### V.    Analysis

Florida's Wrongful Death Statute[5] provides that a tortfeasor shall be liable for damages "[w]hen the death of a person is caused by the wrongful act [or] negligence of any person . . . [if] the event would have entitled the person injured to maintain an action and recover damages if death had not ensued."  Fla. Stat. § 768.19 (2008).  Here, Santana's representatives assert a single count for wrongful death and claim they are entitled to damages because Santana's death was proximately caused by several City of

---

[5]In determining and applying the law of Florida, I "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) (citations omitted).

Hialeah officers[6] who breached their duty of care to Santana by failing to provide him with necessary and prompt medical attention while he was in their custody.[7]  *See* [DE 83].

In Florida, a party asserting a negligence claim must prove "the existence of a duty, breach of that duty, causation, and damages" in order to prevail.  *Horton v. Freeman,* 917 So. 2d 1064, 1066 (Fla. 4th DCA 2006).  While it is true that negligence actions often involve factual questions proper for submission to the jury, there is no question that a grant of summary judgment is appropriate in negligence cases where no reasonable jury could conclude that the defendant breached a duty of care owed to the plaintiff.  *See e.g., Daniels v. Prison Health Svcs. Inc.*, 2007 WL 4287555, *6 (M.D. Fla. Dec. 4, 2007) (granting summary judgment in favor of prison nurse where no reasonable jury could conclude that she breached a duty of care owed to the plaintiff.); *Nobles v. Corrections Corp. of America*, 327 Fed. Appx. 838, 840 (11th Cir. 2009) (affirming grant of summary judgment in favor of corrections company in wrongful death action where corrections officials turned prisoner over for treatment and medical staff failed to adequately treat unknown life-threatening infection).[8]

---

[6] Defendant makes a half-hearted sovereign immunity argument that I unequivocally reject, for it is well-settled in Florida that a police officer's "alleged negligent failure to comply with the duty to provide medical care [to a person in custody] . . . is an operational level activity" to which sovereign immunity does not attach.  *Ferguson v. Perry*, 593 So. 2d 273, 278(Fla. 5th DCA 1992); *see also Harris v. Monds*, 696 So. 2d 446, 446 (Fla. 4th DCA 1997) (opinion by Pariente, J.).

[7] The essence of each party's respective position is as follows: Plaintiffs assert that negligence issues are traditionally within the province of the jury, and that a grant of summary judgment would usurp the function of the jury.  Defendant counters that questions of duty are legal questions and that this matter should be disposed of at the summary judgment stage, particularly in light of the extensively detailed record.

[8] Case discussed at length, *infra*.

Florida law is clear insofar as it imposes upon police officers and prison officials a duty to use reasonable care to ensure the safety of persons within their custody. *See generally, Hutchinson v. Miller,* 548 So.2d 883 (Fla. 5th DCA 1989); *Ferguson v. Perry*, 593 So. 2d 273 (Fla. 5th DCA 1992). This common law mandate is set forth in the Restatement of Torts (Second) § 314A, and has been interpreted by Florida courts to require that "when a person detained by the police manifests such symptoms as would place a reasonable person on notice that the inmate is in need of medical attention, the police are bound to take steps that are reasonable under all relevant circumstances to obtain such care." *Ferguson*, 593 So. 2d at 277; *see also United States v. Stevens*, 994 So. 2d 1062, 1068 (Fla. 2008) (citing § 314A of Restatement of Torts (Second) favorably in context of duties arising out of special relationships).

However, where a prisoner or arrestee is sick or injured, officers "will seldom be required to do more than give such first aid as [they] reasonably can, and take reasonable steps to turn the sick person over to a physician, or to those who will look after the person and see that medical assistance is obtained." *Nobles*, 327 Fed. Appx. at 840; *see also Ferguson*, 593 So. 2d at 277 (noting that where a detained person exhibits a need for medical attention, a police officer's duty is to take reasonable steps to "obtain such care."). Thus, in order to prove that the City of Hialeah officers were negligent in the instant case, Plaintiffs must provide sufficient evidence to establish that the officers failed to take reasonable steps to turn Santana over to medical professionals for care.

Having reviewed the Motion, the responses, and the applicable case law, I find the Eleventh Circuit's recent decision in *Nobles v. Corrections Corp. of America* to be

particularly persuasive[9] given the facts of the instant case.  327 Fed. Appx. 838, 840 (11th Cir. 2009).  In *Nobles*, the Estate of Emma Nobles sued Corrections Corporation of America ("CCA") pursuant to Florida law for wrongful death, asserting that Ms. Nobles died as a result of CCA prison officials' negligent failure to provide her with medical treatment for an infection that resulted in her death.  *Nobles*, 327 Fed. Appx. at 839.  In Ms. Nobles' case, as in the case at bar, there was no dispute with regards to the fact that the aggrieved was provided access to medical treatment.  *Id.*  Rather, the crux of Plaintiff's argument was that the prison officials were negligent because Ms. Nobles was treated for diabetes, abscesses, and skin lesions, instead of the life-threatening infection that ultimately killed her.  *Id.* at 840.  Defendant CCA moved for summary judgment, arguing that there was no genuine issue as to the fact that the prison officials turned Ms. Nobles over to the medical staff for treatment, and that its duty of care to Ms. Nobles was satisfied as a result, regardless of the treatment's ultimate adequacy or propriety.  *Id.*  The district court agreed with CCA, holding that no reasonable jury could conclude that CCA breached its duty of care to Ms. Nobles in light of the fact that she was provided access to medical care, regardless of the medical staff's failure to correctly diagnose and treat the life-threatening infection.  *Id.* at 839.  On appeal, the Eleventh Circuit affirmed the district court's decision. *Id.* at 840.

Similarly, I conclude as a matter of law that given the evidence presented, no reasonable jury could find that the City of Hialeah's officers were negligent in failing to provide Santana access to appropriate medical treatment. The record is clear and it is

---

[9] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." *Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC*, 253 Fed. Appx. 861, 865 n. 5 (11th Cir. 2007).

undisputed that the officers at the scene promptly[10] turned Santana over to paramedics who examined him and did not indicate any need for urgent medical treatment. While it may be true that the paramedics – like the medical staff in *Nobles* – failed to recognize Santana's life-threatening condition, this failure in no way implicates the reasonableness of the officers' actions, for they did exactly what was required of them; that is, they took reasonable steps to promptly turn Santana over to medical professionals, and followed the medical professionals' recommendation by taking him to Ward D in the ordinary course. *Id.* The law does not require otherwise, nor does it require officers to second-guess the judgment of medical professionals. *See Sullivan v. Bornemann,* 384 F.3d 372, 377 (7th Cir. 2004) (noting that law enforcement officers should not be placed in the difficult position of having to second-guess decisions made by medical professionals). Accordingly, I conclude that no reasonable jury could find that the City of Hialeah police officers violated the applicable standard of care.[11]

**VI.   Conclusion**

Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that:

1.     Plaintiffs' Motions [DE 110 and 115] are DENIED.

2.     Defendant's Motion fo Summary Judgment [DE 91] is GRANTED.

---

[10] Plaintiffs do not argue that the passage of nineteen minutes between the time of the initial 911 call and the time of Santana's initial paramedical examination was unreasonable.

[11]While questions relating to causation remain unsettled, I need not reach these issues given that the undisputed facts adequately establish that the officers satisfied their duty to obtain medical treatment for Santana. *See Williams v. Davis,* 974 So. 2d 1052, 1056 (noting that a negligence claimant must establish *all four elements* in order to prevail, including a defendant's failure to conform to a legal duty).

12

3.      All pending motions are DENIED AS MOOT and all upcoming hearings are

CANCELLED.

4.      This case is CLOSED.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 30th day of

November, 2009.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Chris M. McAliley
     All Counsel of Record